# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

**ARGONAUT INSURANCE COMPANY**,

    Plaintiff,

v.

**REAL GOODS ENERGY TECH, INC. d/b/a REAL GOODS SOLAR, INC., GAIAM, INC., and REGRID POWER, INC.**

    Defendants.

---

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

---

Plaintiff, Argonaut Insurance Company, through its undersigned counsel, submits this Complaint for Damages and Injunctive Relief against Real Goods Energy Tech, Inc. d/b/a Real Goods Solar, Inc.; GAIAM, Inc.; and Regrid Power, Inc.

### A.     PARTIES

1. Argonaut Insurance Company ("Argonaut") is an Illinois corporation authorized to conduct business in the State of Colorado, with its principal offices located at 175 East Houston Street, San Antonio, Texas 78205.

2. Upon information and belief, Real Goods Energy Tech, Inc. d/b/a Real Goods Solar, Inc. ("Real Goods") is a Colorado corporation authorized to conduct business in the State of Colorado, with its principal offices located at 833 West South Boulder Road, Building G, Louisville, Colorado 80027.

3. Upon information and belief, at all relevant times herein, GAIAM, Inc. ("GAIAM") is a Colorado corporation authorized to conduct business in the State of Colorado, with its principal offices located at 833 West South Boulder Road, Building G, Louisville, Colorado 80027.

4. Upon information and belief, Regrid Power, Inc. ("Regrid Power") is a Colorado corporation authorized to conduct business in the State of Colorado, with its principal offices located at 833 West South Boulder Road, Building G, Louisville, Colorado 80027.

5. Real Goods, GAIAM, and Regrid Power are collectively referred to herein as the "Indemnitors."

## B. JURISDICTION/VENUE

6. This Court has personal jurisdiction over the Indemnitors because the Indemnitors all reside or transact business in Colorado.

7. This Court has original subject matter jurisdiction over Argonaut's claims against the Indemnitors pursuant to 28 U.S.C. § 1332 (diversity) because the amount of Argonaut's claims against Indemnitors, jointly and severally, exceed $75,000.00, and Argonaut is a citizen of a different state than each of the Indemnitors.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because all Indemnitors are residents of the State of Colorado.

## C. GENERAL ALLEGATIONS

9. On or about February 15, 2013, Argonaut, as surety, issued a Final Acceptance Payment & Performance Bond ("Bond") in the penal amount of $623,946.20 and identified as Bond No. SUR0020555 on behalf of Real Goods, as principal, for engineering, procurement

construction services for the Williamstown Solar Project (the "Project"). A copy of the Bond is attached as **Ex. 1** and incorporated herein by reference.

10. The term of the Bond was February 15, 2013, to October 15, 2015. On or about October 15, 2015, Argonaut issued a Continuation Certificate for the Bond, extending the term of the Bond to December 31, 2016. A copy of the Continuation Certificate is attached as **Ex. 2** and incorporated herein by reference.

11. As consideration for Argonaut issuing the Bond and other bonds, and for other consideration, Real Goods and the remainder of the Indemnitors each executed a General Indemnity Agreement ("GIA") dated April 10, 2009 (Regrid Power); April 16, 2009 (Real Goods); and April 20, 2009 (GAIAM) in favor of Argonaut. A copy of the GIA is attached as **Ex. 3** and incorporated herein by reference.

12. Pursuant to the GIA, "Bond(s)" is defined as:

[A]ny and all bonds including but not limited to surety bonds, undertakings, guarantees, or any contractual obligations, previously or hereafter executed, issued, procured, or undertaken by the Surety, whether directly or as a result of any asset purchase, merger, acquisition, or similar transaction, and any renewals or extensions thereof issued by Surety, or issued by another at the request of the Surety, on behalf of Indemnitors, whether issued prior to or subsequent to the effective date of this Agreement.

13. Pursuant to the GIA, "Losses" is defined as:

[A]ny and all sums (a.) paid by Surety to claimants under the Bonds, (b.) sums required to be paid to claimants by Surety but not yet, in fact, paid by Surety, by reason of execution of such Bonds, (c.) all costs and expenses incurred in connection with investigating, paying or litigating any claim, including but not limited to legal fees and expenses, technical and expert witness fees and expenses and (d.) all costs and expenses incurred in connection with enforcing the obligations of the Indemnitors under this Agreement including, but not limited to interest, legal fees and expenses and (e.) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds and (f.) all other amounts payable to Surety according to the terms and conditions of this Agreement.

3

14. Pursuant to the GIA, the Indemnitors agreed:

To indemnify, hold harmless and exonerate Surety from and against any and all Losses, as well as any other reasonable expense that the Surety may incur or sustain as a result of or in connection with the furnishing, execution, renewal, continuation, or substitution or any Bond(s). Expenses include, but are not limited to: (a) the cost incurred by reason of making an independent investigation in connection with any Bond(s) or this Agreement; (b) the cost of procuring or attempting to procure the Surety's release from liability or a settlement under any Bond(s) upon or in anticipation of Losses, including the defense of any action brought in connection therewith; and (c) the cost incurred in bringing suit to enforce this Agreement against any of the Indemnitors. Payments of amounts due the Surety hereunder, including interest, shall be made immediately upon Surety's demand. Vouchers, affidavits, or other evidence of payment by the Surety shall be prima facie evidence of the Indemnitors' liability for any such losses or other expenses.

15. Pursuant to the GIA:

The Surety may, in its sole discretion, establish a reserve to cover any actual or anticipated, liability, claim, suit judgment, or Losses under any Bond. In such event, the Indemnitors will, immediately upon demand, deposit with the Surety a sum of money equal to such reserve, and any subsequent increase thereof, to be held by the Surety as collateral security on the Bond(s). Such funds will be used by the Surety to pay Losses or may be held by the Surety as collateral against potential future Losses.

16. The Indemnitors specifically agreed:

The Indemnitors hereby grant to the Surety a security interest in all money and other property not or hereafter delivered by such Indemnitors to the Surety for deposit in such reserve, and all income (if any) thereon. Any funds remaining after the Indemnitors' settlement or payment of all Losses will be returned to the Indemnitors within thirty (30) days from the date of the Indemnitors' settlement or payment of the Losses.

17. Pursuant to the GIA:

In the event the Surety receives a claim under any Bond or establishes, in its sole discretion, a reserve in anticipation of incurring Losses, the Surety shall have the right to reasonable access to the books, records, and accounts of the Indemnitors for the purposes of examining the same.

18. Pursuant to the GIA:

The Surety may, in its sole discretion, determine one or more of the following: (a) the Indemnitors financial condition has been or is believed to be deteriorating; or

(b) there has been or is believed to be some other change that adversely impacts the Surety's risk under the Bond(s). In such an event, within thirty (30) days of receipt of the Surety's written demand, the Indemnitors shall procure the full and complete release of the Bond(s) by providing competent written evidence of release satisfactory to the Surety, in its sole discretion. If the Indemnitors fail to provide the aforementioned release Indemnitors shall, within an additional seven (7) days, provide the Surety with collateral in the amount of 100% of all unreleased liability under the Bond(s). The liability shall be determined at the time of the Surety's written demand. Collateral will be in the form of (a) an irrevocable letter of credit in form, content, and issued by a financial institution acceptable to the Surety; (b) a pledged money market account, in the form, content, and issued by a financial institution acceptable to the Surety; and/or (c) other collateral in form, content, and substance acceptable to the Surety, in its sole discretion. Collateral previously provided to the Surety may be utilized to establish compliance with this provision. If the liability subsequently increases, then it is the Indemnitors' responsibility to ensure continued compliance with this provision at all times.

The Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest this requirement to provide collateral under this Agreement (individually and collectively, the "Collateral Requirement"). The Indemnitors stipulate and agree that the Surety will not have an adequate remedy at law should Indemnitors fail to perform the Collateral Requirement and further agree as a result that the Surety is entitled to specific performance of the Collateral Requirement. The Surety's failure to act to enforce its right to specific performance shall not be construed as a waiver of that right, which right may be enforced at any time at the Surety's sole discretion. Indemnitors further agree that this Collateral Requirement shall not limit or be deemed a waiver of the Surety's other rights, which it may exercise in its sole discretion, under this Agreement or otherwise to cancel Bond(s), to demand collateral, or to take any other actions the Surety deems necessary and/or prudent, in its sole discretion, to mitigate actual or potential Losses under any and all Bond(s) written in accordance with this Agreement. The exercise of such additional rights shall not be contingent upon the Surety's enforcement of this provision.

19. On or about March 17, 2016, Argonaut received a Notice of Defective Work and Notice of Default letter from the obligee BAL Solar Project 1, LLC, alleging that Real Goods' work on the Project was defective and estimated costs to correct the deficient work were in excess of $1.8 million (the "Claim").

20. As a result of the Claim, Argonaut made multiple demands on the Indemnitors to post sufficient collateral with Argonaut in the amount of $623,946.20, which represents the penal

5

sum of the Bond, to indemnify Argonaut for its actual and anticipated losses, and for cooperation with Argonaut's investigation into the Claim.

21. On or about June 12, 2015, Argonaut made a demand on the Indemnitors for collateral in the amount of $623,946.20. A copy of the June 12, 2015 demand letter is attached as **Ex. 4** and incorporated herein by reference.

22. On or about August 20, 2015, Argonaut made a second demand on the Indemnitors for collateral in the amount of $623,946.20. A copy of the August 20, 2015 demand letter is attached as **Ex. 5** and incorporated herein by reference.

23. As a result of Argonaut's demands, Real Goods eventually posted $200,000.00 in collateral with Argonaut and agreed to post the remaining $423,946.20 over the course of three months beginning in February 2016.

24. Real Goods failed to post the additional $423,946.20 in collateral.

25. As a result of Real Goods' failure, Argonaut made multiple, additional demands on the Indemnitors to post sufficient collateral with Argonaut in the amount of $423,946.20, which represents the penal sum of the Bond less the $200,000.00 in collateral already posted by Real Goods, to indemnify Argonaut for its actual and anticipated losses and for cooperation with Argonaut's investigation into the Claim.

26. As a result of the Claim, the Indemnitors' failure to post sufficient collateral, and this resultant lawsuit, Argonaut has already incurred attorney's fees, costs, and expenses, with such losses increasing on a near daily basis, and is exposed to potential liability in an amount of the Claim, and any other claims, up to the penal sum of the Bond or any other applicable bond.

27. Despite their obligations to satisfy such demands, the Indemnitors have failed to do so, which has and continues to cause significant and irreparable harm to Argonaut.

28. All conditions precedent to bringing and maintaining this action have been met or have occurred.

**FIRST CLAIM FOR RELIEF**
**(Breach of Express Contract against All Indemnitors)**

29. Argonaut hereby incorporates by reference all the allegations contained in the preceding paragraphs as though fully set forth herein.

30. Indemnitors entered into a valid and enforceable contract, the GIA, with Argonaut.

31. Argonaut substantially performed its obligations under the GIA.

32. Under the clear, express and unambiguous terms of the GIA, the Indemnitors are each required to indemnify, hold harmless and exonerate Argonaut from and against any and all Losses.

33. Under the clear, express and unambiguous terms of the GIA, the Indemnitors are required to provide Argonaut with reasonable access to the books, records, and accounts of the Indemnitors.

34. Argonaut has made demand upon Indemnitors to be indemnified and placed in collateral sufficient to cover such losses and to request the Indemnitors' cooperation with Argonaut's investigation.

35. Each of the Indemnitors has failed to meet its obligations under the GIA, which constitutes a material breach of the GIA.

36. The Indemnitors' individual and collective breach of the GIA has damaged Argonaut, and the Indemnitors are jointly and severally liable to Argonaut for all losses and expenses incurred by Argonaut as a result of the issuance of the Bond and any other bonds, including, but not limited to, attorney's fees and costs, all as provided by the terms of the GIA.

## SECOND CLAIM FOR RELIEF
### (Common Law Indemnification against Real Goods)

37. Argonaut hereby incorporates by reference all the allegations contained in the preceding paragraphs as though fully set forth herein.

38. Real Goods, as the principal under the Bond, is required to indemnify and hold harmless Argonaut from and against any and all liabilities, losses and expenses of any kind or nature, including, but not limited to, interest, court costs, expenses and attorney fees, imposed upon, sustained or incurred by Argonaut on account of the issuance of the Bond.

39. Argonaut has made demand upon Real Goods to be indemnified and placed in funds for all losses sustained as a result of the issuance of the Bond.

40. Real Goods has failed to meet its obligations to Argonaut.

41. Real Goods' failure to meet its obligations to Argonaut has damaged Argonaut, and Argonaut is entitled to damages as a consequence thereof.

## THIRD CLAIM FOR RELIEF
### (Injunctive Relief – Specific Performance against all Indemnitors)

42. Argonaut hereby incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

43. Pursuant to the GIA, each of the Indemnitors is required to post sufficient collateral with Argonaut to cover any and all losses, fees, costs, and expenses of whatsoever kind or nature, including attorney's fees and costs, incurred or to be incurred by Argonaut as a result of the issuance of the Bond.

44. There is no adequate remedy at law for Argonaut to recover the benefit of the GIA.

45. Argonaut has performed all of its obligations under the GIA and Bond.

46. Argonaut requests specific performance of the provisions of the GIA which require the Indemnitors to post sufficient collateral with Argonaut to cover any possible liability or loss for which the Indemnitors are or will be obligated to indemnify Argonaut under the terms of the GIA.

47. Argonaut requests specific performance of the provisions of the GIA which require the Indemnitors to fully cooperate and assist with any investigation and provide the books, records, and accounts requested by Argonaut regarding any investigation into bond claims.

**FOURTH CLAIM FOR RELIEF**
**(Injunctive Relief – *Quia Timet* Rights against Real Goods and all Indemnitors)**

48. Argonaut hereby incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

49. Under the equitable doctrine of *quia timet*, Argonaut is entitled to have Real Goods and the Indemnitors place funds or other security with Argonaut sufficient to cover any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature, including but not limited to court costs, counsel fees, costs of investigation, consultant fees, accountant fees, engineer or construction management fees, together with interest thereon at the maximum rate allowed by law, which Argonaut may sustain or incur by reason or consequence of having issued bonds to Real Goods and/or the Indemnitors' default under the GIA as set forth more fully above and in the GIA.

50. Real Goods and the Indemnitors have failed to place Argonaut in such funds in direct contravention of Argonaut's *quia timet* rights.

51. Unless the Indemnitors' assets are collateralized, Argonaut will not be adequately secured for its obligations under the Bond.

52. Argonaut is without a plain, speedy, or adequate remedy at law, pecuniary compensation would not afford adequate relief, it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief, and Argonaut will be irreparably and permanently injured unless this Court grants the injunctive and equitable relief requested herein.

53. Argonaut is entitled to preliminary and permanent injunctive relief enforcing its *quia timet* rights and granting Argonaut a lien upon all assets and property in which Real Goods or the Indemnitors have an interest, such liens to remain in place until Argonaut has been placed in funds and restraining Real Goods and the Indemnitors and each of them from transferring, disposing or otherwise liquidating any property, real or personal, beyond reasonable living expenses, during the pendency of this matter.

54. Specifically, a valid lien in favor of Argonaut in the amount of $423,946.20 should be placed on the real property located at 833 West South Boulder Road, Louisville, Colorado 80027, all of or part of which Real Goods and/or one or more of the Indemnitors are owners or co-owners.

55. Argonaut should also be given a valid security interest on any and all rights, title and interest of Real Goods and/or the Indemnitors in and to the following: accounts receivable, securities, rents, proceeds of sale, chattel paper, letters of credit, tax refunds, inventory and general intangibles; policies of insurance; and intellectual property.

### FIFTH CLAIM FOR RELIEF
**(Unjust Enrichment - Equitable Liens)**

56. Argonaut hereby incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

57. Argonaut conferred a benefit on Indemnitors by extending surety credit and/or issuing the Bonds on behalf of Real Goods.

58. Indemnitors accepted and appreciated that benefit by profiting from Real Goods' operations, which would not have been possible without the issuance of Argonaut's surety credit and/or Bonds to Real Goods.

59. Indemnitors further accepted and appreciated that benefit by virtue of the equity in their real and personal property as a direct result of these profits, which equity would not have been possible without the issuance of Argonaut's surety credit and/or Bonds to Real Goods.

60. Indemnitors agreed to defend and indemnify, and post collateral with, Argonaut in exchange for and pursuant to the terms of the GIA.

61. By failing and refusing to do so, Indemnitors have been and will continue to be unjustly enriched by keeping funds or other collateral to which Argonaut is entitled pursuant to the GIA.

62. It would be inequitable for Indemnitors to retain the benefit of Argonaut's surety credit and/or the Bonds without paying Argonaut for their value and complying with their obligations under the GIA.

63. Under these circumstances and given the relationship between Argonaut and Indemnitors, general considerations of right and justice dictate that Argonaut be granted the right to have Indemnitors' assets applied to their obligation to post collateral with Argonaut.

64. Specifically, Argonaut seeks an equitable lien in the amount of $423,946.20 on Real Goods' and/or the Indemnitors' real property located at 833 West South Boulder Road, Louisville, Colorado 80027, and any other property on which Argonaut becomes aware.

WHEREFORE, for the foregoing reasons, Argonaut demands judgment against each of the Indemnitors, jointly and severally, as follows:

- For all losses, expenses, costs and attorney's fees, plus pre- and post-judgment interest at the maximum rate allowed by law, incurred by Argonaut as a result of the issuance of the Bond and other bonds;

- For specific performance of the provisions of the GIA which require the Indemnitors to post sufficient collateral with Argonaut to cover any possible liability or loss for which the Indemnitors will be obligated to indemnify Argonaut under the terms of the GIA;

- For preliminary and permanent injunctive relief requiring the Indemnitors to place Argonaut in funds by money, property or liens or security interests in real or personal property, as determined by Argonaut, and restraining each of the Indemnitors from transferring, disposing or otherwise liquidating any property owned by the Indemnitors, or any of them, real or personal, beyond reasonable living expenses, during the pendency of this matter;

- For an equitable lien in the amount of $423,946.20 to be placed in favor of Argonaut on the real property located at 833 West South Boulder Road, Louisville, Colorado 80027, all of or part of which Argonaut and/or one or more of the Indemnitors are owners or co-owners;

- For a security interest to be granted in favor of Argonaut on any and all rights, title and interest of Real Goods and/or the Indemnitors in and to the following: Real Goods', GAIAM's, and/or Regrid Power's accounts receivable, securities, rents,

proceeds of sale, chattel paper, letters of credit, tax refunds, inventory and general intangibles; policies of insurance; and intellectual property.

- For such other and further relief as the Court deems just and proper.

Respectfully submitted this 18th day of August, 2016.

                                                                                                                                            THE HUSTEAD LAW FIRM
                                                                                                                                                     *A Professional Corporation*

*The Original Signature is on File at
The Hustead Law Firm, A Professional
Corporation*

*s/Patrick Q. Hustead*
Patrick Q. Hustead, Esq.
Connor L. Cantrell, Esq.
4643 South Ulster Street, Suite 1250
Denver, Colorado 80237
Telephone: (303) 721-5000
*Attorneys for Argonaut Insurance Company*

                                           THE HUSTEAD LAW FIRM
                                                  *A Professional Corporation*

*The Original Signature is on File at
The Hustead Law Firm, A Professional
Corporation*

*s/Connor L. Cantrell*
Patrick Q. Hustead, Esq.
Connor L. Cantrell, Esq.
4643 South Ulster Street, Suite 1250
Denver, Colorado 80237
Telephone: (303) 721-5000
*Attorneys for Argonaut Insurance Company*

**Address of the Plaintiff:**
175 East Houston Street
San Antonio, Texas 78205